IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT W. RUSSELL, | ) | CASE NO. 1:06 CV 485 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| STUART HUDSON, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

## Introduction

Before me[1] is a petition by Robert W. Russell for a writ of habeas corpus,[2] as well as

several ancillary motions.[3] Russell is presently incarcerated at the Hocking Correctional

Institution in Nelsonville, Ohio,[4] where he is serving seven life terms, along with several

shorter concurrent terms,[5] imposed following his 2003 conviction by a jury in the Cuyahoga

---

[1] ECF # 6 (referral by U.S. District Judge John R. Adams).  The case has been
subsequently reassigned to U.S. District Judge Sara Lioi by non-document Order of
March 21, 2007.  That reassignment does not affect this referral.

[2] ECF # 1.

[3] *See*, ECF # 38 (motion for summary judgment); ECF # 49 (motion for leave to
expand the record).  In a non-document entry dated November 27, 2007, this Court has
previously denied the motion for summary judgment without prejudice to considering the
arguments made therein together with the merits of the habeas petition.

[4] ECF # 48.

[5] ECF # 41 (re-filed state court record) at 47.  Russell was also ordered to pay a fine
and was found to be a sexual predator.  *Id.*

County (Ohio) Court of Common Pleas on numerous counts related to the repeated sexual abuse of his step-daughter.[6]

In his federal habeas petition, Russell raises fifteen claims for relief.[7]  The State, in its return of the writ, contends that part of one claim should be dismissed as procedurally defaulted and another claim should be dismissed in its entirety since it does not state a cognizable claim for federal habeas relief.[8]  It further argues that the remaining claims should be denied since they were resolved against Russell by the state court in rulings that were not unreasonable applications of clearly established federal law.[9]

Although the State, in a disappointing brief, has incorrectly asserted that two grounds in this petition were denied by the state courts[10] and failed to note that six grounds were actually denied by the state appeals court on the basis of *res judicata*, thus making them procedurally defaulted, for the reasons that follow, I will recommend that Russell's habeas petition be dismissed in part and denied in part.

---

[6] *Id.* at 1-8.

[7] ECF # 1 at 5-6M.

[8] ECF # 11 at 19-25.

[9] *Id.* at 25-42.

[10] These grounds actually were never presented at all in any state court proceeding. As will be discussed later, I will recommend overlooking the lack of exhaustion and addressing the substance of the claims because the two claims are without merit.

# Facts

## 1.    Underlying offenses, trial and sentencing

The Ohio appellate court that reviewed Russell's case on direct appeal found the facts

of the underlying offenses and trial to be as follows:[11]

> Appellant's convictions result from his relationship with his step-daughter, who will be referred to in this opinion as "S." Appellant, who had been married and divorced twice previously and who had six children of his own, married S's mother in late July 1987, two weeks after S's tenth birthday.  S and her mother thereupon moved into appellant's North Royalton home with him.

> According to S, approximately two months later, a few times a week, appellant began to offer to take her mother's place at bedtime.  S had a bedtime routine in which, after she had gone to her room, put on her nightclothes, and climbed into bed, her mother would come into the room, and occasionally, rub her back through the nightclothes before S went to sleep.  Therefore, S was unsurprised when appellant, too, began to do so.

> Within a few months, however, appellant's "backrubs" became increasingly more elaborate.  First, he placed his hands under her nightclothes and onto her skin when rubbing her back.  Next, he told S to turn over so he could rub her "stomach;" his hands, however, soon wandered over her pubic area and her breast area as well as her stomach. Eventually, appellant's "backrubs" reached the point at which he was touching S's skin in the front as well as her back and rubbing his hands over her breast and pubic areas.  Finally, upon gaining access to S's pubic area, appellant placed his fingers inside her vagina.  He did this "well over five times."

> S testified appellant's activities with her occurred "more frequently as time went on."  By the time she was eleven years old, he asked her to keep him company in the living room as he watched pornographic movies.   Soon he began "pecking" her on the mouth, which led to "kissing" her with "his tongue in [her] mouth."

---

[11] Facts found by the state appeals court on its review of the trial record are presumed correct by a federal habeas court.  *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

S testified that one time, near the end of one of the movies, appellant pulled on her arm and demanded she sit on his lap.  Her resistance to this suggestion failed to deter him.  Appellant got to his feet, removed his pants and underwear, dragged her up, removed her lower clothing, and sat back down on the couch, pulling her, face forward, onto his lap.  She testified that appellant "tried to have sexual intercourse" with her, but was unable to penetrate her, because she "was way too small" for a grown man and she was pushing and struggling against him.  S broke away from his grip, ran to the bathroom, and locked herself inside for several hours.

Since appellant was unable to satisfy himself in that manner, S testified that, twice, after a "backrub," he demanded she let him "feel his penis in [her] mouth."  She refused to comply, so he put "his hands on the back of [her] head and forced himself inside [her] mouth by pushing [her] head toward his pubic area;" he pried her mouth open by placing his thumb into the side, near her jaw.

S indicated these episodes ceased when she turned twelve.  She had by that time begun to resist appellant's advances more strenuously, even biting him on the cheek on one occasion.  Appellant told S's mother that the injury was from an accident with a hand weight that he had been using.

Moreover, her mother and appellant had decided to do some traveling, so they left S with her maternal grandparents for a year.  The following summer, just before S turned fourteen, she returned to appellant's house in North Royalton, but soon left again to attend an out-of-state school.

The family had moved to the city of Wooster during S's high school years. One afternoon in 1995, following an argument with her mother, S arrived at her place of employment with a black eye.  Suspecting child abuse had occurred, her co-workers telephoned the police.

The family briefly was investigated.  For the first time. S mentioned to a police officer that appellant "touched" her in an inappropriate manner. However, S's allegations against appellant could not be corroborated. S moved out of the home to live with her father, and the others in the family moved back to North Royalton.  Thus, the matter languished.  During 1997, S's mother and appellant went though a divorce; the issue of possible parental child abuse of S, who was by then twenty years old, was raised, but, again, came to no result.

-4-

In late 2002, North Royalton Police detective David Loeding met with appellant's sister; she had complaints about the stalled investigation of her brother.  Using information given to him by appellant's sister, Loeding contacted appellant's natural daughters.  He spoke with thirty year old E, and twenty-eight year old R.  He took the results of his supplemented investigation to the county prosecutor's office.

In January 2003, the Cuyahoga County Grand Jury issued a sixteen-count indictment against appellant for his actions with S that took place from July 1987 through July 1989.  Appellant was charged with two counts of forcible rape, one count of attempted forcible rape, and five counts of forcible felonious sexual penetration, all of a minor under the age of thirteen.  Appellant was also charged with five counts of gross sexual imposition upon a minor under the age of thirteen, and three counts of kidnapping for the purpose of engaging in sexual activity.

Appellant's case proceeded to a jury trial.  The state presented the testimony of S, her two older half-sisters, her mother, her childhood friend in whom at the age of eleven she had confided appellant's actions, Loeding, and two other police officers involved in the investigation.  Appellant testified in his own defense.

The jury ultimately found appellant guilty of all the charges against him.[12]

Prior to trial, Russell had moved to dismiss the case against him on the grounds that the State had failed to initiate prosecution within the six-year statute of limitations.[13]  The State opposed the motion,[14] and the trial court denied it, holding with the State that the

---

[12] ECF # 43 (state court record) at 394-98; *State v. Russell*, No. 83699, 2004 WL 2340125, at **1-2 (Ohio App. 8th Dist., Sept. 23, 2004).

[13] ECF # 41 (state court record) at 10-17.

[14] *Id.* at 18-26.

applicable statute of limitations had been extended by statute from six to twenty years prior to the expiration of the original six-year period in Russell's case.[15]

Also prior to trial, the State moved to present other acts, evidence of Russell's molestation of his older natural daughters, as showing a pattern of forcing sexual conduct upon underage female members of his family.[16]  The trial court eventually, during the trial, admitted this evidence together with a limiting instruction.[17]

As previously noted, following his conviction at trial, Russell was sentenced to seven consecutive life sentences on the rape and felonious sexual penetration charges, as well as one 3-15-year term for attempted rape, five 2-year sentences for gross sexual imposition, and three 5-15-year sentences for kidnapping, all such sentences to be served concurrently.[18]  He was also ordered to pay court costs and fines, and was classified as a sexual predator.[19]

## 2.    Direct appeal

Russell timely appealed his conviction to the Ohio appeals court.[20]  In his brief, Russell, represented by the county public defender, raised the following six assignments of error:

---

[15] *Id.* at 27.

[16] *Id.* at 28-44.

[17] *See*, ECF # 43 (state record – opinion of state appeals court) at 544 (quoting limiting instruction of trial judge).

[18] ECF # 41 (continuation of state court record) at 47.

[19] *Id.*

[20] *Id.* at 48-65.

1.      Robert Russell was denied his constitutional right to a fair and unbiased jury by the repeated introduction of prejudicial other acts evidence in the state's case in chief.

2.      Robert Russell has been denied [sic] of his liberty without due process of law by his convictions in the case at bar, as the state of Ohio lacked jurisdiction to bring him to trial in violation of his constitutional right to a speedy trial.

3.      Robert Russell has been deprived of his constitutional right not to be put in jeopardy two times for the same offense by his convictions for kidnapping in the case at bar, as such convictions are allied offenses of similar import to other crimes for which Mr. Russell was also convicted.

4.      Robert Russell was denied his due process rights to a fair trial when the trial court permitted a witness whose name had not been disclosed to the defense during discovery.

5.      Robert Russell was denied his constitutional right to effective assistance of counsel by the numerous instances in which counsel's representation fell below any objective level of competence.

6.      The trial court erred and denied Robert Russell his constitutional right to a fair and impartial jury when it permitted the jury to ask the witnesses questions.[21]

---

[21] ECF # 42 (continuation of state court record) at 66-106.  (Additional subsequent pages of the state record containing copies of cases cited in the brief and submitted with the brief are not here cited).

The State filed a brief in response.[22]  Russell thereupon filed, *pro se*, a reply brief.[23] The state appellate court in its opinion found that Russell had waived the claim presented in his third assignment of error and overruled each remaining claim on the merits.[24]

Following this decision, Russell, *pro se*, timely filed a notice of appeal to the Supreme Court of Ohio.[25]  In his memorandum in support of jurisdiction, Russell presented the following six propositions of law:

1.  Where a conviction is obtained through the use of "other acts" evidence which is unrelated to the case at bar and is not either part of the immediate background or inexplicably [sic] related to the allegations being tried, the conviction violates the constitutional right to a fair and unbiased jury; [sic] requiring reversal.

2.  Where excessive pre-indictment delay impairs the ability to prepare a defense, due process is violated.

3.  A trial court has an affirmative duty to conduct voir dire prior to the sentence imposition to determine whether two or more offenses are allied offenses of similar import and failure of trial counsel to object at sentencing does not obviate the court's duty, nor waive the issue for appellate review.

4.  When the prosecution deliberately conceals the identity of a prosecution witness by substituting the last name of a witness in discovery, the trial court errs and abuses its discretion in failing to exclude that testimony at trial.

---

[22] *Id*. at 190-231.

[23] ECF # 43 (continuation of state court record) at 344-51.  A supplement of various letters, reports, previously filed suits and trial transcript excerpts filed with this reply brief and made a part of the state record is not included in the above-cited pages.

[24] *Id*. at 398-409; *Russell*, 2004 WL 2340125, at **3-7.

[25] *Id*. at 411-12.

5.      When a jury in a criminal case is invited to ask questions of witnesses, it converts the jury from a role as a neutral fact finder into active participants in the adversarial testing process and violates the defendant's right to a fair trial by an impartial jury.[26]

The State waived a response,[27] and, on March 2, 2005, the Ohio Supreme Court denied Russell leave to appeal, dismissing the matter as not involving any substantial constitutional question.[28]  The record does not indicate that Russell sought a writ of certiorari from the United States Supreme Court.

## 3.      Application to reopen the direct appeal

On November 15, 2004, subsequent to the denial of his direct appeal by the Ohio appellate court, but while his motion for leave to appeal that denial was still pending before the Ohio Supreme Court,[29] Russell, *pro se*, filed a timely application with the appeals court pursuant to Ohio Rule of Appellate Procedure 26(B) to reopen his direct appeal.[30]  In that application, Russell cited the following seven assignments of error that he alleged were not originally presented on appeal because his appellate counsel was constitutionally ineffective:

_____

[26] *Id*. at 413-30.

[27] *Id.* at 431.

[28] *Id*. at 432.

[29] The direct appeal was denied by the Ohio appeals court in an opinion dated September 23, 2004 and journalized on October 4, 2004.  The motion for leave to appeal to the Ohio Supreme Court was denied on March 5, 2005.

[30] ECF # 43 (continuation of state record) at 433-48.  As before, these pages contain the application and necessary supporting affidavits, but not additional exhibits submitted at the same time which are also part of the state record here.

1.      The trial court erred as a matter of law in denying the motion to dismiss the indictment in this case based on the expiration of the statute of limitations under O.R.C. § 2901.13.

2.      Appellant's right to a fair trial and to due process of law were violated by the repeated instances of prosecutorial misconduct which so infected the trial as to render the entire proceedings unfair.

3.      The trial court erred and abused its discretion in refusing to grant the motion to dismiss the indictment for lack of specificity, where the lack of specificity prevented the preparation of an adequate defense.

4.      Appellant was denied a fair trial and due process of law by the admission of a prior consistent statement by the hearsay testimony of a surprise witness designed to bolster the impeached claims of the accuser, without the necessary ingredient of a claim of "recent fabrication" as an exception to the preclusionary rule under Ev. R. 801(D)(1)(b).

5.      The trial court erred in imposing fines upon appellant in the absence of first conducting any inquiry as to his present or future ability to pay such fines.

6.      The trial court erred as a matter of law in failing to conduct a voir dire before imposing multiple consecutive sentences for allied offenses of similar import, in violation of appellant's right to due process of law.

7.      The limiting instruction given by the trial court for the introduction of other acts testimony was erroneous, and violated due process of law, and appellant was denied the effective assistance of counsel for failing to object.[31]

The State opposed the motion to reopen.[32]  In response to the State's motion, Russell thereupon filed a motion for leave to supplement his application to add two additional

---

[31] *Id.*

[32] *Id.* at 489-512.

claims[33] and also moved to have the State's memorandum in opposition stricken since, he alleged, it could not be determined if it was timely filed.[34]  The Ohio appeals court denied Russell's Rule 26(B) application.[35]  The court held first that Russell's application was barred by the doctrine of *res judicata*, since it involved claims of ineffective assistance of appellate counsel that could have been presented to the Ohio Supreme Court in the motion for leave to appeal from the appellate court's ruling on direct appeal, but were not so presented.[36]  In addition, the court then reviewed and denied each claim on the merits.[37]

Russell appealed this denial of his Rule 26(B) application to the Ohio Supreme Court.[38]  In his memorandum in support of jurisdiction,[39] Russell presented the following three propositions of law:

> 1.      The court of appeals erred when it dismissed the application on grounds that the issues contained therein were barred by the doctrine of res judicata.
>
> 2.      The court of appeals erred when it dismissed the application as insufficient.

---

[33] *Id*. at 513-33.

[34] *Id.* at 534-36.  The motion was denied.  *Id*. at 550.

[35] *Id.* at 537-46.

[36] *Id.* at 538-39.

[37] *Id.* at 539-46.  The appeals court noted that although it was, in a separate order, denying Russell's motion to supplement his application to add two additional claims, see, *id*. at 549, those claims would be reviewed nonetheless.

[38] *Id*. at 551-52.

[39] *Id*. at 553-67.

3.     The court of appeals erred in denying appellant's motion to supplement the application with additional assignments of error.[40]

The State waived response,[41] and, on October 5, 2005, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.[42]

## 4.     Other post-conviction petitions and motions

### A.     Petition to vacate or set aside judgment

While his original direct appeal, submitted through counsel, was pending before the Ohio appeals court, Russell, *pro se,* filed a motion with the trial court on July 14, 2004 to vacate or set aside the judgment of conviction on the grounds of actual innocence, ineffective assistance of trial counsel and in the interest of justice.[43] The State filed a brief in response, principally arguing that these claims were barred by *res judicata*.[44]  Russell then filed a reply.[45]

After this initial exchange of briefs in 2004-05, Russell filed nine additional motions to supplement his petition, together with various ancillary motions, most of which generated

---

[40] *Id*. at 534.

[41] *Id.* at 568.

[42] *Id*. at 569.

[43] ECF # 44 (continuation of state record) at 570-586.  As before, the lengthy attachment of multiple documents accompanying this filing is not included in the cited pages.

[44] *Id.* at 679-93.

[45] *Id*. at 694-99.

responses by the State.[46] On the record as submitted, this state petition and all related motions are still outstanding in state court.[47]  However, this state petition does not include any claims now being presented by this federal habeas action.[48]

**B.      Motion to dismiss the indictment**

In addition to the previously-noted petition to vacate or set aside the judgment of conviction, on November 2, 2005, Russell also filed a motion pursuant to Ohio Criminal Rule 16(B)(3) to dismiss the indictments because of pre-indictment delay and alleged prosecutorial misconduct before the grand jury.[49]   He then filed a supplemental memorandum.[50] The State responded in opposition, asserting, as before, that all issues raised by Russell were barred by *res judicata*.[51]  Russell filed a reply.[52]

---

[46] *See*, ECF # 46 (continuation of state record) at 1140-47 (Cuyahoga County Court of Common Pleas docket sheet).

[47] *Id*.

[48] Russell's motion to include his state post-conviction petition with this federal habeas petition has been denied.  ECF #27; *see also*, ECF # 11 at 7 n.1 (noting that the current habeas petition does not include these claims).

[49] ECF # 46 at 1045-62.

[50] *Id.* at 1082-1100.

[51] *Id*. at 1126-30.

[52] *Id*. at 1131-37.

-13-

As was the case with Russell's motion to set aside the judgment of conviction, the record furnished by the State shows that the motion to dismiss the indictment remains outstanding in the state trial court.[53]

**5.      Federal habeas petition**

On March 3, 2006, Russell filed the present federal petition for habeas relief.[54] In it, he asserts the following fifteen grounds for relief:

1.      Petitioner was denied a fair trial by an unbias[ed] jury by repeated introduction of prejudicial "other acts" of [sic] evidence, (uncharged).

2.      Petitioner was denied his rights to a speedy trial.

3.      Petitioner was denied his right not to be put in jeopardy twice for the same offense and counsel's failure to object renders counsel ineffective.

4.      The prosecution failed to disclose evidence favorable to the defendant.

5.      Petitioner was denied effective assistance of counsel.

6.      Petitioner was denied a fair trial by an impartial jury, when the jury was permitted to ask the witnesses questions.

7.      Petitioner was denied due process by the excessive pre-indictment delay which impaired the ability to prepare a defense.

8.      Petitioner was denied due process when the statute of limitations had expired to indict petitioner.

---

[53] *See*, *id.*, at 1140-47.

[54] ECF # 1.  Inasmuch as the Ohio Supreme Court dismissed his direct appeal on March 2, 2005, and that Russell has one year to file a federal habeas petition, 28 U.S.C. § 2244(d)(1), such time period commencing after the 90-day period for filing a writ of certiorari with the United States Supreme Court has elapsed after the end of his state direct appeal process, *see*, *Bronough v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000), this petition is timely-filed.

-14-

9.      Petitioner was denied a fair trial due to prosecutorial misconduct.

10.     Petitioner was denied due process when the indictment lacked specificity in order for petitioner to prepare for a defense rendering the indictment insufficient.

11.     Petitioner was denied a fair trial by the admission of hearsay testimony designed to bolster the impeached accuser.

12.     Petitioner's consecutive sentences are contrary to law, when the offenses are allied offenses of similar import.

13.     Petitioner was denied the effective assistance of counsel, when counsel failed to object to the limiting instruction of similar acts of [sic] evidence.

14.     The evidence was insufficient to classify petitioner as a sexual predator when the evidence was not clear and convincing.

15.     The trial court abused its discretion by limiting cross examination of the accuser, denying petitioner a fair trial, denying petitioner the right to confront his accuser.[55]

The State in its return of the writ does not mention that claims seven through thirteen were actually denied, as noted above, by the state appeals court on the principal ground of *res judicata*, since they could have earlier been presented during Russell's motion for leave to appeal to the Ohio Supreme Court on direct appeal.  That finding, as will be discussed later, makes all six of these claims procedurally defaulted here.  Further, as also noted above, the State does not seem aware that grounds fourteen and fifteen here were never previously presented to any state court, thus making them, as will be described later, unexhausted.

---

[55] ECF # 1 at 6-6M.

The State does argue, instead, that ground fourteen, which relates to Russell's classification as a sexual predator and is unexhausted, should be dismissed as non-cognizable in federal habeas proceedings.[56] It further contends that a portion of ground three should be dismissed as procedurally defaulted.[57]  That portion claims that Russell was exposed to double jeopardy because he was sentenced for both kidnapping and rape, but maintains that they are allied offenses of similar import.[58] The State here asserts that this claim was deemed waived by the Ohio appellate court because it was not presented at sentencing and, so, is now procedurally defaulted.[59] Finally, the State argues that the remaining claims should be denied since they were found to be without merit by the state courts in decisions that are not unreasonable applications of clearly established federal law.[60]

In his 90-page traverse,[61] Russell, *inter alia*, contends: (1) that his challenge to his sexual predator classification is proper on habeas review because it raises an *ex post facto* argument;[62] (2) that he has grounds to excuse the alleged procedural default, *i.e.*, ineffective

---

[56] ECF # 11 at 25.

[57] *Id*. at 22-24.

[58] *Id.*

[59] *Id.*

[60] *Id.* at 25-42. Again, not all claims were even presented to a state court and most of those that were so presented were denied, in the first instance, on *res judicata*.

[61] ECF # 21. The traverse was also filed with 313 pages of supporting materials.  *See*, ECF # 19 (170 pages) and # 20 (143 pages).

[62] ECF # 21 at 14-17.

assistance of trial counsel;[63] (3) that due to a numbering error in transferring his claims from his 26(B) application to the habeas petition, ground seven of this petition is duplicative and so "forfeit;"[64] and, (4) that the state court's decisions on the remaining issues should not be "presumed correct," but, rather, are contrary to clearly established federal law.[65]  The balance of the traverse then seeks to apply that argument to each claim, rejecting the State's contention that these claims were correctly denied by the Ohio appeals court. [66]

As will be developed below, I will recommend finding:

(1)     that grounds fourteen and fifteen are unexhausted, but should be addressed on the merits and then denied;

(2)     that ground six is non-cognizable here, inasmuch as jury questioning is a state law matter committed to the discretion of the state trial judge, and so this claim should be dismissed;

(3)     that part of ground three, as well as all of grounds seven through thirteen, are procedurally defaulted and so also should be dismissed;

(4)     that grounds one through six, excepting that part of ground three which was procedurally defaulted, were properly denied by the Ohio appeals court in a decision that was not an unreasonable application of, nor contrary to, clearly established federal law.

I will first set forth the relevant standards of review and then apply those standards to the various claims.

---

[63] *Id.* at 14.

[64] *Id.* at 22.

[65] *Id.* at 17-24.

[66] *Id.* at 25-89.

## Analysis

**1.      Standards of review**

**A.      Exhaustion**

By statute, state prisoners, as a condition of seeking federal habeas review, must exhaust all available state court remedies by first fairly presenting their claims to the state courts.[67]  This requirement is satisfied when a petitioner fairly presents all his claims to the highest court in the state in which the petitioner was convicted, thus giving that state a full and fair opportunity to rule on the petitioner's claims before he seeks relief in a federal habeas court.[68]  Simply put, a state prisoner must first invoke one full round of a state's established review procedure for his claims before being entitled to federal habeas relief.[69]

Unless an exception applies, a petition must be dismissed for lack of exhaustion if it contains even one issue that was not first presented to the state courts, so long as a state remedy is still available.[70]  The petitioner bears the burden of proving that he has exhausted all available state remedies.[71]

---

[67] 28 U.S.C. § 2254(b)(c); *Rhines v. Weber*, 544 U.S. 269, 274 (2005) ("AEDPA preserved [the] total exhaustion requirement").

[68] *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004).

[69] *O'Sullivan*, 526 U.S. at 852.

[70] *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982); *Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000).

[71] *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

However, in lieu of dismissing an entire petition containing both exhausted and unexhausted claims, *i.e.*, a "mixed" petition, a district court may, in its discretion: (1) stay further consideration of the mixed petition while the petitioner returns to state court to present his unexhausted claims,[72] such a stay to be conditioned on the petitioner showing good cause for not previously exhausting those claims and the unexhausted claims not being plainly without merit;[73] (2) permit the petitioner to amend the petition to delete the unexhausted claims;[74] or (3) excuse the lack of exhaustion and consider the unexhausted claims, but only if the entire petition is without merit[75] and so further state action "would be an exercise in futility."[76]

## B.    Non-cognizability

State prisoners are entitled to federal habeas corpus relief only when they are in custody due to violations of the Constitution, laws or treaties of the United States.[77] As such, claims for relief based on violations of state law are non-cognizable in a federal habeas proceeding.[78]

---

[72] *Rhines*, 544 U.S. at 274.

[73] *Id.* at 278.

[74] *Id.*

[75] 28 U.S.C. § 2254(b)(2); *Williams v. Bobby*, No. 1:06-cv-2032, 2007 WL 2156402, at *8 (N.D. Ohio, July 25, 2007).

[76] *Turner v. Bagley*, 401 F.3d 718, 724 (6th Cir. 2005); *Lyons v. Stovall*, 188 F.3d 327, 335 (6th Cir. 1999).

[77] 28 U.S.C. § 2254(a).

[78] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Rulings by the state's highest court on matters of state law are binding on federal courts.[79]  Further, a federal court may not second-guess a state court's interpretation of its own procedural rules.[80] Thus, even if a state court errs in applying its own procedural default statute, the error is not cognizable in federal habeas review.[81]

## C.    Procedural default

The Sixth Circuit has formulated the standard of review applicable to claims of procedural default as follows:

> A petitioner for a writ of habeas corpus must meet certain procedural requirements to permit review of his claim by a federal court.  The petitioner must first exhaust the remedies available in state court by fairly presenting his federal claim to the state court; unexhausted claims will not be reviewed by the federal court.  The exhaustion "requirement is satisfied when the highest court in the state in which the prisoner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  The federal court will not review claims that were not entertained by the state court either due to the petitioner's failure to raise those claims in the state court while state remedies were available *or* when the petitioner's failure to comply with a state procedural rule prevented the state court from reaching the merits of the claims.

> For noncompliance with a state procedure to serve as a bar to habeas review, a state procedure must satisfy the standards set forth in *Maupin v. Smith*. First, there must be a state procedure in place that the petitioner failed to follow.  Second, the state court must actually have denied consideration of the petitioner's claim on the grounds of the state procedural default.  Third, the state procedural rule must be an "adequate and independent state ground" to preclude habeas review.  This inquiry "generally will involve an examination of the legitimate state interests behind the procedural rule in light of the legitimate federal interest in considering federal claims." A state procedural

---

[79] *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

[80] *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

[81] *Simpson v. Jones*, 238 F.3d 399, 406-07 (6th Cir. 2000).

rule must be "firmly established and regularly followed" to constitute an adequate basis for foreclosing habeas review. A state procedural rule is an independent ground when it does not rely on federal law. If these three factors are satisfied, the petitioner can overcome the procedural default by either "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrat[ing] that failure to consider the claims would result in a fundamental miscarriage of justice."[82]

To establish "cause" for a procedural default, a habeas petitioner must show that "something *external* to the petitioner, something that cannot fairly be attributable to him[,]" precluded him from complying with the state procedural rule.[83] Establishing "prejudice" from non-review of allegedly defaulted claim requires that any purported constitutional error be shown to have worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[84]

Ineffective assistance of counsel may provide cause to excuse procedural default, but only if that claim of ineffective assistance of counsel is itself first fairly presented to and exhausted in the state courts.[85] However, failure to exhaust state remedies on an ineffective assistance of counsel excuse for a procedural default may also be itself excused from procedural default if the federal habeas petitioner can establish cause and prejudice concerning that claim.[86] But a claim of ineffective assistance of counsel will not excuse a

---

[82] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 430-31 (6th Cir. 2006) (internal citations omitted, emphasis in original).

[83] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis in original).

[84] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[85] *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).

[86] *Id.*

procedural default occurring during state post-conviction proceedings because there is no

right to counsel during such proceedings.[87]

## D.    Federal habeas review of state court decision on the merits

"The federal district court sitting in review under § 2254 is not a super appellate

court."[88]  The extent of permissible federal review of a state court decision on the merits is

set forth by 28 U.S.C. §§ 2254(d)(1) and (2), which provide that, with respect to any claim

that has been adjudicated on the merits by the state court, the writ shall not issue unless the

adjudication of that claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as determined by
> the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the state court
> proceeding.

The phrases "contrary to" and "unreasonable application" are not the same.[89]  Under

the "contrary to" standard, a state court's decision is contrary to clearly established federal

law when it "confronts a set of facts that are materially indistinguishable from a decision of

[the Supreme Court] and nevertheless arrives at a result different from [this] precedent."[90]

Under the "unreasonable application" clause, the federal habeas court may grant relief only

---

[87] *Coleman*, 501 U.S. at 752.

[88] *Langford v. Bradshaw*, No.1:05-cv-1487, 2007 WL 1299214, at *3 (N.D. Ohio
April 30, 2007).

[89] *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

[90] *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

if the state court identified the correct governing principles from the holdings of the Supreme Court of the United States applicable to petitioner's claim, but then unreasonably applied those principles to the claim at issue.[91] The proper analysis here is whether the state court decision was "objectively unreasonable" and not merely erroneous or incorrect.[92]  Russell bears the burden of showing that the state court applied the correct principle of law, but in an objectively unreasonable manner.[93]

Clearly established federal law refers "to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions at the time of the relevant state-court decision."[94]  The state court decision need not refer to relevant Supreme Court cases, or even evidence an awareness of them.[95]  Rather, the test is whether the result and reasoning of the state court decision is consistent with Supreme Court holdings.[96]  A state court does not act contrary to clearly established federal law when the precedents of the Supreme Court are ambiguous or non-existent.[97]  Ultimately, in conducting its analysis, the federal habeas court must assume

---

[91] *Id.* at 407-08.

[92] *Id.* at 409-11.

[93] *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

[94] *Williams*, 529 U.S. at 412.

[95] *Early v. Packer*, 537 U.S. 3, 8 (2002).

[96] *Id.*

[97] *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

that the state courts "know and follow the law," and afford those courts a "highly deferential" standard of review which affords them "the benefit of the doubt."[98]

## 2.      Application of standards to Russell's petition

### A.      Grounds fourteen and fifteen, though unexhausted, should be considered here.

Ground fourteen, alleging that there was insufficient evidence to classify Russell a sexual predator, and ground fifteen, contending that the trial court abused its discretion in handling cross-examination, were not previously asserted to an Ohio court in any of the pleadings now a part of this record.  As such, they are not exhausted.  However, for federal habeas purposes, both claims are clearly non-cognizable claims, as will be developed more fully below.  Thus, these claims are without merit, as is the rest of the petition.

Moreover, requiring Russell to exhaust these claims with a new application to re-open his appeal would likely be pointless inasmuch as a new Rule 26(B) application would require a showing of good cause as to why these issues were not earlier asserted to the Ohio court and that ineffectiveness of counsel is the basis for the claim.[99]  These are showings that he has no basis to make, since he has already made one Rule 26(B) application without the hindrance of an allegedly ineffective lawyer concerning purported defects at trial and sentencing.

---

[98] *Visciotti*, 537 U.S. at 24.

[99] *See*, Ohio R. App. P. 26(B)(2)(b)(d) requiring that an application to re-open an appeal make a showing of "good cause" for untimely filing of the claim and an affidavit attesting that the basis for the claim is ineffectiveness of counsel.

Accordingly, I recommend finding that it would not be appropriate to stay consideration of the exhausted claims while Russell sought state review of the unexhausted claims, since such a review would only result in a denial of his new Rule 26(B) application and thus the procedural default of these claims. Further, inasmuch as the unexhausted claims themselves have no merit and the exhausted claims should be denied or dismissed, the better course is to proceed to deny or dismiss these unexhausted claims as part of this entire petition.[100]

**B.  Ground six – presence of an allegedly non-impartial jury because jury asked questions during trial – is non-cognizable here inasmuch as jury questioning is a state procedural matter committed to the discretion of the state trial court.**

Russell's sixth ground for habeas relief asserts that he was denied a fair trial by an impartial jury because the jury was permitted to ask questions of the witnesses during the trial.[101] The state appeals court denied this claim on direct appeal, observing that, pursuant to the teaching of the Supreme Court of Ohio in *State v. Fisher*,[102] the trial court fully complied with the procedure set forth for permitting a jury to ask questions during trial.[103]

Here, Russell invites this Court to overrule the Ohio Supreme Court's holding in *Fisher*, relied on by the state appeals court, as purportedly at variance with a federal appeals

---

[100] *See*, *Williams*, 2007 WL 2156402, at *8.

[101] ECF # 1 at 6D; ECF # 21 at 62-63.

[102] *State v. Fisher*, 99 Ohio St. 3d 127, 789 N.E.2d 222 (2003).

[103] ECF # 43 at 404.

-25-

court ruling from the Eighth Circuit[104] that allegedly disfavored such a practice.[105]   In response, the State merely attaches, without comment, the original ruling of the state court.

I note first that it is Russell's burden, as outlined above, to show that the decision of the state appeals court is either contrary to clearly established federal law or not a reasonable application of such law, by means of clearly established federal law in the form of a holding of the United States Supreme Court.  Since Russell has failed to provide a single case from the United Stated Supreme Court holding that questions from jurors during a criminal trial violate the Sixth Amendment's constitutional right to trial before a fair and impartial jury, he has not met his burden for achieving habeas relief on this issue.

Moreover, a review of the Ohio Supreme Court decision relied upon here shows that it was a case of first impression in Ohio.[106]   In that context, a unanimous Ohio Supreme Court[107] concluded that questions by jurors in criminal cases are permitted, with the issue of how such questioning should be conducted left to the sound discretion of the trial court.[108]

_____

[104] *United States v. Johnson*, 892 F.2d 707 (8th Cir. 1989).

[105] ECF # 21 at 61.  As more fully discussed later, this ruling actually permitted jury questioning.  The passage expressing disfavor of the practice quoted by Russell is from the concurring opinion.

[106] *Fisher*, 99 Ohio St. 3d at 130, 789 N.E.2d at 226.

[107] All justices but one concurred in the full opinion and the remaining justice concurred in the syllabus and judgment.  *See*, *id.*, 99 Ohio St. 3d at 127, 789 N.E.2d at 222.

[108] *Id.*, 99 Ohio St. 3d at 135, 789 N.E.2d at 230.

As *Fisher* further observes, this holding is consistent with the conclusions of every federal circuit court to address the issue and with the state courts of all but five states.[109]

Most important for this matter in a federal habeas context, the question of whether the trial court properly permitted jury questioning in his case is thus a matter committed to that court's discretion, and not one implicating, *per se*, any federal constitutional rights.  As such, it is not a matter for habeas review unless the purported abuse of discretion denied petitioner a fundamentally fair trial as defined by the Supreme Court.[110]  Russell attempts no such showing.  Instead, Russell merely offers the wholly unfounded conclusion that the "prevailing federal authority" is to disfavor jury questions,[111] when the only language he cites is drawn from the concurring opinion of a single federal appeals case that, in its holding, actually permitted such questions.[112]

Accordingly, I recommend finding that ground six, concerning questions by the jury during trial, involves a procedural matter committed to the discretion of the state trial court and that Russell has not shown that the trial court's decision deprived him of a fundamentally fair trial. Thus, I recommend that ground six be dismissed as non-cognizable in a federal habeas proceeding.

---

[109] *Id.*, 99 Ohio St. 3d at 130-31, 789 N.E.2d at 226.

[110] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

[111] ECF # 21 at 62.

[112] *Compare*, *United States v. Johnson*, 892 F.2d 707, 710 (8th Cir. 1989) (holding is that lower court did not err in permitting jury questions); and *id.* at 713-15 (concurring opinion states belief that jury questioning is "fraught with danger" and so hopes practice will cease, but recognizes and is bound by precedent which permits it).

**C.  Ground fourteen – alleging that there was insufficient evidence to classify Russell as a sexual predator – should be dismissed as non-cognizable.**

It is now well-settled in the Sixth Circuit that classifying a person as a sexual predator in Ohio does not result in such person being "in custody" for the purpose of giving rise to a federal habeas claim.[113] Accordingly, any habeas claim arising from an alleged deficiency in the procedure by which such classification was made does not state a cognizable ground for habeas relief.

Therefore, I recommend that Russell's claim articulated in ground fourteen of his petition be dismissed.

**D.  Ground fifteen – alleging that the trial court abused its discretion by limiting cross-examination – should be dismissed as non-cognizable.**

As noted earlier, matters concerning the admission of evidence or errors in state procedure are questions of state law and non-cognizable in a federal habeas court except if the petitioner shows that the trial court's decision resulted in the denial of a fundamentally fair trial.[114] Here, in two paragraphs of his traverse, Russell does little more than contend that he was prejudiced by the trial court "not permit[ting] extensive inquiry into [his step-daughter's] deliberate fabrications" during cross-examination of Russell's step-daughter

---

[113] *Bachman v. Bagley*, 487 F.3d 979, 984 (6th Cir. 2007); *Leslie v. Randle*, 296 F.3d 518, 521-23 (6th Cir. 2002); *see also*, *Goodballet v. Mack*, 266 F. Supp. 2d 702, 707-08 (N.D. Ohio 2003).

[114] *Estelle*, 502 U.S. at 67-68.

on the ancillary matter of a child custody hearing concerning the step-daughter's own child.[115]

Even if the trial court had abused its discretion as to not permitting the scope of cross-examination Russell wished were allowed on the matter of his step-daughter's testimony during a custody hearing involving her own child, it is clear, in the first instance, that the court did permit defense counsel some leeway to question the witness on that subject, presumably to determine her propensity for truthfulness.[116]  Moreover, again assuming that the decision to restrict greater cross-examination here was an abuse of discretion, something not proven by Russell, he would need to go further and show that such an abuse in this particular case resulted in him being denied a fundamentally fair trial.  He has attempted no such showing and thus, the claim here remains purely a state law claim concerning the admission of evidence on cross-examination.

Accordingly, I recommend that ground fifteen of this petition be dismissed as stating a non-cognizable state law claim.

**E.    Part of ground three – that Russell was impermissibly put in jeopardy twice for the same offense since both kidnapping and rape are "allied offenses of similar import" – should be dismissed as procedurally defaulted.**

Russell's contention that he was unconstitutionally put in jeopardy twice for the same offense as concerns his convictions for kidnapping and rape was found to have been waived by the state appeals court because Russell had not made a contemporaneous objection at

---

[115] ECF # 21 at 89.

[116] *See*, *id.*

-29-

trial.[117]  Russell responds that although the Ohio Supreme Court has held that failure to raise this argument during trial does waive the argument for future appeals,[118] this Court should nevertheless review his claim under a plain error analysis.[119]

First, it must be noted that Russell has earlier advanced a "cause" argument for the failure to make a contemporaneous objection to the alleged double jeopardy here.  In his direct appeal, Russell seemed to argue that the ineffectiveness of his trial attorney was responsible for that failure to object.[120]  The state appeals court rejected that contention, finding that because, especially in cases involving a minor victim, Ohio courts have not accepted the argument that kidnapping and rape are allied offenses of similar import, counsel cannot be ineffective in choosing not to present a non-meritorious argument.[121]

Here, it is initially clear, as the state appeals court found and Russell accepts, that he did not contemporaneously object to being sentenced on both kidnapping and rape charges and so waived his right to appeal this issue.  As such, that issue would then be procedurally defaulted for federal habeas purposes.

It is also clear that Russell now seeks to avoid losing this claim to procedural default by arguing that this Court should review the otherwise defaulted claim under Federal

---

[117] ECF # 43 (continuation of state record) at 405.

[118] ECF # 21 (traverse) at 47.

[119] *Id.*

[120] ECF # 42 at 95.

[121] ECF # 43 at 407.

Criminal Rule 52(b), which permits an appeals court to consider matters of plain error that occurred at trial even when that error was not raised in the briefs.[122]  However, in here citing to the Federal Criminal Rules, Russell overlooks the basic fact that a direct appeal is not subject to the same rules as a petition for habeas relief.  As the Supreme Court has plainly stated, even with matters originating in the federal criminal system, where courts are bound by the Federal Criminal Rules, a federal habeas court cannot, absent cause and prejudice, consider a claim that was procedurally defaulted on direct appeal.[123]

Accordingly, I recommend that Russell's attempt to excuse his recognized procedural default here by asserting that this Court can, by virtue of Federal Criminal Rule 52(B), consider unraised claims as plain error to be found without merit.  I, therefore, further recommend that this double jeopardy claim in ground three be dismissed as procedurally defaulted.

---

[122] ECF # 21 at 47.  Russell simply cites to "Crim. R. 52(B)" as the authority for this federal habeas court to act on in this instance.  Attempting to "actively construe" his *pro se* petition leniently, *see*, *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985), I have construed his unattributed citation a "criminal rule" as a citation to the Federal Criminal Rules, since a citation to Ohio rules in the context of authority for a federal court to act would render this argument meaningless on its face.

[123] *Reed v. Farley*, 512 U.S. 339, 354-55 (1994) (habeas writ will not be allowed to serve as an appeal and is available in cases of procedural default only on showing of cause and prejudice); *see also*, *Engle v. Isaac*, 456 U.S. 107, 134-35 (1982) (cause and prejudice test applies even when petitioner asserts his conviction was the result of "plain error").

**F.      Grounds seven through thirteen should be dismissed as procedurally defaulted.**

These claims were first raised by Russell as part of his Rule 26(B) application for re-opening his appeal.[124]  The state appeals court, as its principal ground for denying relief, held that review of these claims on the merits was barred by *res judicata*.[125]  Specifically, the appeals court noted that all these grounds were presented in terms of ineffective assistance of appellate counsel and, since they could have been asserted to the Supreme Court of Ohio during the motion for leave to appeal where Russell was proceeding *pro se*, *res judicata* must preclude consideration in the Rule 26(B) application since these arguments should have been made earlier.[126]

Russell, in appealing this decision, attempted to argue to the Ohio Supreme Court that, notwithstanding any failure to raise these issues during direct appeal, the Ohio Supreme Court should give no effect to the *res judicata* bar because reaching the underlying issues was a matter of general importance to state jurisprudence,[127] and failure to reach the issues would be unjust.[128]  The Supreme Court of Ohio, without opinion, dismissed the appeal as not involving any substantial constitutional question.[129]

---

[124] ECF # 43 at 433-47.

[125] *Id.* at 538-39.

[126] *Id.*

[127] *Id.* at 555.

[128] *Id.* at 560.

[129] *Id.* at 569.

I note first that the State in its return of the writ, inexplicably failed to raise the issue of procedural default with respect to these claims, despite *res judicata* being the principle stated reason for denying the claims in the Ohio appeals court.  However, I note further that when confronted by a procedural default not pled by the state, a federal habeas court may, in its discretion, elect to consider the claims on their merits or, *sua sponte*, dismiss the claims as procedurally defaulted if the petitioner has been given an opportunity to respond on that issue.[130]

While, as noted, *sua sponte* dismissals for procedural default are generally not favored so as to allow a petitioner an opportunity to argue cause and prejudice concerning the default, that concern is not present when, as here, the petitioner has already been apprised in the record of his failure to comply with a state procedural rule and has provided a written response to the procedural default.[131]

Thus, "in the interest of 'comity, federalism and judicial efficiency,'"[132] I recommend finding that Russell's current grounds seven through fifteen, found by the Ohio appeals court in its review of the Rule 26(B) to be barred by *res judicata*, be found here to be procedurally defaulted.

---

[130] *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), citing *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002).

[131] *Id.* (finding *sua sponte* dismissal proper where the record contained a full treatment of the procedural default).  Russell makes no argument as to the cause for failing to assert ineffective assistance of appellate counsel in his appeal to the Supreme Court.

[132] *Id.* at 477, citing *Scott v. Collins*, 286 F.3d 923, 930 (6th Cir. 2002) (quoting *Boyd v. Thompson*, 147 F.3d 1124, 1128 (6th Cir. 1998)).

G.   **The claims presented in Russell's grounds one through six, excepting the procedurally defaulted element of ground three, were denied by the state appeals court in decisions that were not unreasonable applications of clearly established federal law or were not contrary to such clearly established federal law, and so here should be denied.**

These claims were originally presented to the Ohio courts in Russell's direct appeal. They were denied by the appeals court and then the Ohio Supreme Court denied leave to appeal.  They will here be considered sequentially.

*(1)*    *Ground one – alleged improper use of other acts evidence*

Citing Ohio statutes and Ohio's rules of evidence, Russell argued in his direct appeal that the trial court should not have permitted the State to introduce evidence that he had sexually abused his natural daughters and that he had financially taken advantage of his elderly mother.[133]  The appeals court initially noted that under Ohio law, the admission of evidence is a matter committed to the sound discretion of the trial judge.[134]  It then further observed that Ohio statutes provide for the introduction of evidence such as the abuse of his natural daughters for a strictly limited purpose when such evidence can show a pattern of conduct.[135]

Under that rubric, the appeals court found (1) that the State properly introduced the evidence of Russell's abuse of his two natural daughters to show that he employed the same pattern of conduct in those cases as he did with his step-daughter; (2) that the introduction

---

[133] *See*, ECF # 43 at 401.

[134] *Id.* at 402.

[135] *Id.* at 403.

of this evidence was accompanied by three limiting instructions by the court to the jury;[136] and (3) that the probative value of this testimony, given together with cautionary instructions as to its limited use, was not outweighed by their potential for prejudice against Russell.[137]

As to the introduction of evidence that Russell had financially taken advantage of his elderly mother, the court found that Russell had raised the issue of his financial acumen by testifying that he had no need for his mother's money, but that his sister, who cooperated with police in making the case against Russell, was motivated by vindictiveness, believing that she had been excluded from sharing in their mother's estate.[138]  The appeals court concluded that since Russell had raised the issue of his truthfulness in financial matters as part of his attack on his sister's motivation, the State was justified in challenging that implication by the introduction of evidence to the contrary.[139]

I note initially that, to the extent a petitioner's argument is based on a purported violation of state law, the petitioner has failed to state a claim upon which the writ may issue.[140]  An issue of the admissibility of evidence is a matter of state law that does not rise to a level of constitutional magnitude unless any error was so egregious that the petitioner

---

[136] Once before each of the two natural daughters testified, and once again during final jury instructions.

[137] *Id.* at 402-03.

[138] *Id.* at 403.

[139] *Id.*

[140] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

was denied a fundamentally fair trial.[141]  Simply put, Russell's claim here that the state trial court erred in the application of state law, specifically in a ruling on the admissibility of evidence, does not, standing alone, state a cognizable claim for habeas relief.[142]

However, Russell, on direct appeal, also framed this claim, grounded specifically on purported violations of state law, as one generally challenging the state trial court's evidentiary ruling as a federal constitutional violation that deprived him of his right to a fair and impartial jury.[143]  He repeats that formulation in his present habeas petition.[144]  As noted, the state appeals court resolved this claim solely as a matter of state law, concluding (1) that the admission of this evidence was proper under Ohio law, and (2) that the probative value of the admitted evidence was not substantially outweighed by the possibility of unfair prejudice.[145]

---

[141] *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

[142] *Bey*, 500 F.3d at 519 (claim that state trial court violated Ohio R. Evid. 404(B) by admitting other acts evidence "does not provide a cognizable basis for granting habeas relief"); *Bugh*, 329 F.3d at 512 (federal habeas court would not consider claim that state trial court violated Ohio R. Evid. 404(B) by admitting other acts evidence in trial for rape of a minor); *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).

[143] *See*, ECF # 42 (appellant's brief) at 80-88.  Although stated as a Sixth Amendment claim, Russell's actual contention was that the allegedly improper admission of this evidence was unfairly prejudicial to him at trial.  That claim is more properly stated as a due process argument based on a purported violation of the Fourteenth Amendment.  *See*, *Bey*, 500 F.3d at 520 (claim that the admission of challenged evidence rendered a trial fundamentally unfair is a due process claim).

[144] ECF # 1 at 5A-B.

[145] ECF # 43 at 401-03.

-36-

This matter is thus highly similar to the Sixth Circuit's decisions in *Bey v. Bagley*[146] and *Bugh v. Mitchell*.[147]  As the court initially observed in *Bey*, there is no United States Supreme Court precedent "indicating that a state court violates a criminal defendant's due process rights when it *properly* admits evidence of the defendant's other bad acts."[148] Accordingly, Russell may not obtain habeas relief on the grounds that the State court decision here was contrary to clearly established federal law because "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."[149]

Thus, as *Bey* notes, Russell here is "left to argue that regardless of its compliance with state law, the state's action may nonetheless violate due process, and thus be contrary to Supreme Court precedent."  To do so, Russell has the burden of showing either that the Ohio evidentiary rule itself "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,"[150] or that the specific admission of this evidence offends such a fundamental principle of justice.[151]

---

[146] *Bey*, 500 F.3d 514.

[147] *Bugh*, 329 F.3d 496.

[148] *Bey*, 500 F.3d at 520.

[149] *Bugh*, 329 F.3d at 512.

[150] *Bey*, 500 F.3d at 521, quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

[151] *Id.*

First, while Russell in his traverse copiously points to the right to a fair trial as being fundamental and one that can be compromised by prejudicial testimony, he nowhere contends that Ohio Rule of Evidence 404(B), in itself, is inherently unconstitutional and violates the right to a fair trial.[152] He does not argue, nor could he, that Ohio Rule of Evidence 404(B) itself is directly contrary to clearly established federal law.[153]

Thus, Russell's remaining argument for federal habeas purposes is that, despite being otherwise properly admitted under Ohio law, the other acts evidence here was so unfairly prejudicial that its admission offended some principle of justice so deeply rooted in the traditions and conscience of our people as to be ranked as fundamental.  That is, his argument must be that the introduction of other acts evidence into his trial rendered that trial fundamentally unfair.

As the Supreme Court stated in *Dowling v. United States*,[154] they have defined "very narrowly" the category of infractions that violate "fundamental fairness."[155]  Essentially, such infractions are only those that "violate[] those fundamental concepts of justice which lie at

---

[152] ECF # 21 at 25-33.  In fact, Russell relies on the argument that Ohio R. Evid. 404(B) is a valid and proper shield against the admission of prejudicial other acts evidence. *See, id.* at 33.

[153] In the context of the Federal Rules of Evidence, the Supreme Court has specifically held that the introduction of prior acts evidence is permissible.  *See*, *e.g.*, *Old Chief v. United States*, 519 U.S. 172, 190-92 (1997).  It "has explicitly not addressed the issue in constitutional terms."  *Bugh*, 329 F.3d at 513.  Ohio R. Evid. 404(B) is substantially similar to the federal rule.  *Broom v. Mitchell*, 441 F.3d 392, 405 n.20.

[154] *Dowling v. United States*, 493 U.S. 342 (1990).

[155] *Id.* at 352.

the base of our civil and political institutions, and which define the community's sense of fair play and decency."[156]

Here, the evidence that Russell had abused his natural daughters was obviously harmful to his defense.  However, the issue is whether the admission of that evidence, in full conformity to Ohio law, was fundamentally unfair.  The facts are that defense counsel knew of this testimony before trial; that counsel had a full opportunity to cross-examine these witnesses and to present rebuttal evidence; and that the jury was instructed multiple times that it should only consider this evidence for purposes of showing a common pattern of conduct.[157]  Moreover, any claim of fundamental unfairness is also undercut by the fact that the victim of the crimes for which Russell was on trial testified against him and was also subject to cross-examination and rebuttal.

Moreover, the other acts evidence admitted concerning his financial dealings with his mother's property, which was allowed as rebuttal of his claims regarding his sister's alleged motivation to cooperate with police, was also subject to being, in turn, rebutted by evidence of Russell's truthfulness and fairness.  In particular, Russell himself had the chance to directly testify as to the truth, as he understood it, about his financial dealings with his mother, and his attorney had a full opportunity to argue to the jury either that Russell's version was correct or that the State's version, if true, was irrelevant to the issue of his guilt or innocence.

---

[156] *Id.* at 353.

[157] Federal habeas courts presume that state juries follow such instructions. *See*, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

As such, Russell's argument here, as well as before the state appeals court, does not articulate a basis by which his case could fall within the narrow category of infractions that *Dowling* would categorize as a violation of fundamental fairness.  Indeed, as was the case in *Bey*,  Russell has offered little more than his disagreement with the decision to admit this evidence, and "[Russell's] personal disagreement is not cognizable on federal habeas review, inasmuch as it involves no constitutional dimension."[158]

Accordingly, I recommend that Russell's first ground for relief be denied since the decision of the state court in denying this claim was not contrary to any decision of the United States Supreme Court.[159]

---

[158] *Bey*, 500 F.3d at 523.

[159] Russell also submitted a *Chapman* harmless error analysis, contending that this Court should not excuse any error created from admitting the other acts evidence here as harmless.  ECF # 21 (traverse) at 34-37.  Obviously, a harmless error review is not required when, as here, there is no showing of constitutional error in the underlying admission of the evidence.  In addition, as the Supreme Court has recently held, the proper standard for conducting harmless error review in a federal habeas proceeding is not *Chapman* (state must prove error harmless beyond a reasonable doubt), but rather *Brecht* (error is harmless unless shown to have had a substantial and injurious effect on the trial), even where the state court may have employed *Chapman*. *Fry v. Pliler*, __U.S. __, 127 S. Ct. 2321 (2007).  The state court here conducted no harmless error analysis.

Similarly, Russell attempts in his traverse to add a new argument concerning the language of the limiting jury instructions given as this evidence was presented to the jury and in the final instructions, ECF # 21 at 38A-B.  This is equally unavailing.  No such argument concerning the language of the limiting instructions was ever previously presented to the Ohio courts.  Federal habeas law requires that a petitioner "fairly present" all claims through one full round of the state review procedure as a condition to obtaining habeas review. *O'Sullivan*, 526 U.S. at 842.  This new argument should not result in the dismissal or stay of the petition for non-exhaustion since it was not raised in the petition and does not constitute a separate claim, *see*, *Rhines*, 544 U.S. at 274, but neither should it be considered here.

-40-

*(2)*     ***Ground two – alleged speedy trial violation for pre-indictment delays***

Russell argues that he was denied his right to a speedy trial because the indictment was eight years after the discovery of the crime.[160]  In essence, Russell contends that although the State became aware of the allegations of Russell's step-daughter in 1995, it did not bring an indictment against him until 2003, thus allegedly prejudicing Russell.

The state appeals court here rejected Russell's argument on two grounds:  (1) it held that since Russell was not subject to any prosecution before the indictment was issued, and the indictment was issued within the statute of limitations, the constitutional right to a speedy trial was not implicated;[161] and (2) any due process violations as a consequence of pre-indictment delay require proof of "actual prejudice," and Russell has made no such showing.[162]  In his traverse, Russell vigorously contends that the delay in his case was "inherently prejudicial"[163] and that he need not show any particular actual prejudice to prevail.[164]

Russell's argument of inherent prejudice, relying on *Doggett v. United States*,[165] is misplaced.  *Doggett* dealt with the delay between an indictment and the subsequent arrest,

---

[160] *See*, ECF # 21 at 39-42 (ground two).

[161] ECF # 43 at 399, citing *United States v. Marion*, 404 U.S. 307 (1971).

[162] *Id.*, citing *State v. Luck*, 15 Ohio St. 3d 150, 153, 472 N.E.2d 1097, 1102 (1984), citing *Marion*, 404 U.S. 307.

[163] ECF # 21 at 64.

[164] *Id.* at 40-42, citing, *inter alia*, *Doggett v. United States*, 505 U.S. 647 (1992).

[165] *Id.*

-41-

holding that delays longer than one year between obtaining an indictment and securing an arrest are presumptively prejudicial.[166]  However, *Doggett* also re-emphasized that Sixth Amendment speedy trial rights have "no application beyond the confines of a formal criminal prosecution" and, thus, are not triggered until "arrest, indictment, or other official accusation."[167]

Russell here seeks to ground his purported speedy trial violation on the alleged delay between when police learned about these offenses and when he was indicted.  As the state appeals court correctly noted, however, since Russell was not subject to any formal criminal prosecution before the indictment was returned, no Sixth Amendment speedy trial rights had yet arisen.[168]  This holding is fully consonant with clearly established federal law.

With respect to Russell's separate claim of a possible Fourteenth Amendment due process violation in that his indictment was impermissibly delayed for years after police learned of an alleged offense, he fares no better.

First, the state appeals court rejected this contention, citing *State v. Luck*,[169] for the holding that an appellant must prove actual prejudice from any pre-indictment delay and concluding that Russell had not offered "even a suggestion" that he suffered any actual

---

[166] *Id.* at 652.

[167] *Id.* at  655; *see also*, *United States v. MacDonald*, 456 U.S. 1, 7 (1982), Sixth Amendment speedy trial rights do not begin "until charges are pending;" *Marion*, 404 U.S. at 321, speedy trial rights only arise by "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge."

[168] ECF # 43 (state appeals court opinion) at 399.

[169] *Luck*, 15 Ohio St. 3d 150, 472 N.E.2d at 1099 at ¶ 2 of syllabus.

prejudice from the delay in his case.[170]  *Luck*, in turn, directly relies on and adopts[171] the United States Supreme Court's decision in *United States v. Lovasco*,[172] which states that (1) pre-indictment delay resulting in actual prejudice to a defendant is necessary to a due process claim, but (2) actual prejudice alone is insufficient since any delay must be evaluated in light of the state's reasons for delay.[173]  Specifically, *Lovasco* found that:

> It requires no extended argument to establish that prosecutors do not deviate from "fundamental conceptions of justice" when they defer indictments until they have probable cause to believe an accused is guilty; indeed it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause.  It should be equally obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are able to establish the suspect's guilt beyond a reasonable doubt.  To impose such a duty "would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself."[174]

Again, Russell contends that, as regards to any due process violation from a pre-indictment delay, he need make no showing of actual prejudice since the purported delay of almost 16 years here was "so egregious that there is an overwhelming presumption" of prejudice.[175]  This is plainly an incorrect statement of clearly established federal law.  As articulated by the Supreme Court in *Lovasco*, establishing a due process violation from a

---

[170] ECF # 43 at 399.

[171] *Luck*, 15 Ohio St. 3d at 153-54, 158, 472 N.E.2d at 1102, 1105.

[172] *United States v. Lovasco*, 431 U.S. 783 (1977).

[173] *Id.* at 790.

[174] *Id.* at 790-91 (citations omitted).

[175] ECF # 1 (petition) at 5C; ECF # 21 (traverse) at 41.  Each document used identical language.

pre-indictment delay requires both (1) a showing of actual prejudice from the delay and then (2) that any reasons for the delay on the part of the state be taken into account.  As the state appeals court observed, Russell has done neither.

Thus, since the state appeals court correctly applied clearly established federal law in denying this claim, I recommend that ground two of Russell's petition for habeas relief be denied.

**3.      *Ground four[176] – prosecution failed to disclose the correct name of a witness prior to trial resulting in an alleged denial of due process when the witness's testimony was admitted over defense objections.***

This claim asserts a purported due process violation based on the State's alleged failure to provide the correct last name of one of its witnesses prior to trial,[177] purportedly resulting in surprise to the defense and harm from the admission of this testimony.[178]  The state appeals court found first that Russell had not met his burden of showing that he was, in fact, surprised.  It noted that he knew his step-daughter had confided the fact of her abuse to a childhood friend named "Jennifer" and that there was only one Jennifer on the witness list, even though her last name was incorrectly given as her maiden name, not her current correct married name.[179]  It further found that, even if this was an error, there was no

---

[176] Ground three was treated earlier as containing a procedurally defaulted claim.

[177] This claim appears by its caption to be a purported *Brady* violation.  However, as presented here and on direct appeal, there was no *Brady* claim but, rather, a due process argument that the admission of evidence from a witness whose correct name had not been on the State's witness list unfairly prejudiced Russell.

[178] *See*, ECF # 43 (state appellate opinion) at 400.

[179] *Id*.

prejudice, since Russell did not request a continuance to better prepare for the testimony of this witness.[180]

Russell here responds that the State had to know the correct last name of the witness and that the trial court should have either proposed a continuance or prohibited the witness from testifying.[181]  He rests his argument here,[182] as he did on direct appeal, on the claim that the trial court abused its discretion to admit evidence and that, as consequence of that abuse, he was deprived of his right to cross-examine "Jennifer Childers" because she appeared on the witness list under her maiden name of "Jennifer Stefano."[183]

I initially note here, as was noted in discussing Russell's first claim, that mere allegations that a state court misapplied state law concerning the admission of evidence do not rise to federal constitutional levels unless the admission of that evidence resulted in a fundamentally unfair trial.[184]  Despite Russell's general allegations that could be construed as claiming that admitting the testimony of Jennifer Childers was fundamentally unfair, he

---

[180] *Id.* at 401.

[181] ECF # 21 at 53-54, citing *State v. Wilson*, 91 Ohio App. 3d 611, 632 N.E.2d 1384 (Ohio App. 2d Dist. 1993).

[182] Russell's traverse is essentially a word for word restatement of his brief on direct appeal.  While this clearly provides no additional argument to this Court as to why, if at all, the state court was incorrect in its judgment, it perhaps may be somewhat excused since the State, in the body of its return of writ, does nothing more than provide the standard of review, *see*, ECF # 21 at 25-27, and then simply copy the state appeals court decisions on direct appeal and on denying the Rule 26(B) application.  ECF #11 at 30-42.

[183] ECF # 21 at 54.

[184] *Bey*, 500 F.3d at 519.

provides no evidence that this admission of evidence falls within the narrow category of offenses that constitutes fundamental unfairness as defined by the Supreme Court in *Dowling*.[185]   Moreover, undercutting any claim of prejudice, the state appeals court is unchallenged in observing that Russell did not ask for a continuance at trial if he was, in fact, surprised by the identity of the witness and required additional time.[186]

Accordingly, I recommend either dismissing this claim as entirely a state evidentiary issue resolved as a matter of state law, or, alternatively, denying the claim as the state court decision was not contrary to, nor an unreasonable application of, clearly established federal law.

## *(4)*      *Ground five – ineffective assistance of trial counsel*

Russell contends here, as he did on direct appeal, that his trial counsel was constitutionally ineffective for:  (1) not fully investigating the history of civil litigation involving Russell and his family that "would have confirmed the multiple layers of false accusations" against Russell, thus compromising counsel's "ability to effectively confront witnesses;"[187] (2) failing to preserve the speedy trial, other acts testimony, allied offenses of similar import and surprise witness testimony issues for appellate review;[188] and (3) asking

---

[185] *Dowling*, 493 U.S. at 353.

[186] *See also*, *State v. Heinish*, 50 Ohio St. 3d 231, 235-36, 553 N.E.2d 1026, 1032 (1990).  No error for trial court to admit testimony of undisclosed witness, even though a violation of evidence rules, where no evidence that foreknowledge of witness identity would have benefitted appellant or that admission prejudiced him.

[187] ECF # 1 at 6C.

[188] *Id.*

questions during cross-examination of Russell's natural daughter that were "devastating" to his defense.[189]

The state appeals court first stated the standard of review, citing Ohio case law, as requiring Russell to show both (1) that his counsel's representation fell below an objective standard of reasonableness, and (2) that he was prejudiced by counsel's performance, such prejudice requiring a showing that "were it not for counsel's errors, the result of the trial would have been different."[190]  Moreover, the Ohio appellate court stated that the burden was on Russell to prove the ineffectiveness of his counsel since trial counsel is strongly presumed to have rendered adequate assistance.[191]

Employing that standard of review, the appeals court proceeded to examine each of the specific allegations of ineffective assistance of counsel, denying each in turn.

I note first that the state appeals court correctly stated the clearly established federal law applicable to ineffective assistance of counsel.  Although the court cited Ohio cases for the governing standard of review, those cases, in turn, specifically relied on the clearly established federal law of ineffective assistance of counsel articulated by the Supreme Court

---

[189] Russell apparently did not include this third category in his recitation of this claim in his habeas petition, *see*, ECF # 1 at 6C, but he raised it on direct review in the state court and raises it again in his traverse.  *See*, ECF # 21 at 57-59.  Since, as noted, Russell appears to have simply copied his state appellate brief as his traverse here, it is clear that he re-stated this cross-examination question claim since that was an element of the state appeal.  However, he did not raise it in his habeas petition, for whatever reason.  In the interest of thoroughness, I will treat it as having been raised in the petition.

[190] ECF # 43 at 405-06.

[191] *Id.* at 406.

-47-

in *Strickland v. Washington*.[192]  Thus, since the Ohio court properly set forth the applicable standard of review for federal claims of ineffective assistance, I will follow the format of the state appeals court in considering each of Russell's individual contentions.

(a)      *"Devastating" cross-examination questions*

Russell contended on appeal and re-states in the traverse that his trial counsel was ineffective when he asked Russell's natural daughter if it wasn't inconsistent to now say she "loved" Russell when he had, according to her, done terrible things to her as a child. Russell's daughter replied, "Absolutely not.  He's sick."  Counsel then asked, "And you say you love him because he's sick?" "Yeah," responded the daughter. "Would you not love somebody because they have cancer?  He's sick.  He's got a problem.  He preys on small children.  He's sick.  He's a sexual predator.  I look just like him; I'm named after him.  He's my dad."[193]

This exchange, argues Russell, "alone virtually insured [his] conviction."[194]  He maintains that counsel's questioning, by leaving an opening for his daughter to call him "sick" and a "sexual predator," was below any objective level of reasonableness and caused "disastrous consequences" for his defense.[195]

---

[192] *Id.* at 405, citing *State v. Bradley*, 42 Ohio St. 3d 136, 137, 538 N.E.2d 373, 375 (1989), ¶¶ 2, 3 of the syllabus citing *Strickland v. Washington*, 466 U.S. 668 (1984); and *State v. Smith*, 17 Ohio St. 3d 98, 100, 477 N.E.2d 1128, 1131 (1985), quoting and citing *Strickland*.

[193] *See*, ECF # 21 at 57-58 (traverse quoting the state trial record).

[194] *Id.* at 58.

[195] *Id.*

The state appeals court, however, noted that counsel appeared to have been trying to undermine the daughter's credibility with the jury by pointing out that "her feelings were contradictory, at best, and, therefore, incredible to a person of ordinary sensibility."[196] The court, accordingly, declined to fault defense counsel for this exchange, citing *State v. Hoffner*[197] for the rule that the scope of cross-examination falls within the ambit of trial strategy and that debatable trial tactics do not establish ineffective assistance of counsel.[198]

Indeed, federal law is also plain that a petitioner's challenge to a tactical decision at trial must overcome the presumption that such a decision represented sound trial strategy.[199] As such, the federal law has concluded that a strategic choice, made after a thorough investigation of the law and the facts, is "virtually unchallengeable."[200]

Here, I recommend finding that the decision of the state court was not an unreasonable application of clearly established federal law. What was devastating about the testimony of Russell's natural daughter was her direct, personal confirmation of her own abuse, not this colloquy. Perhaps the only chance defense counsel had to blunt her powerful testimony of childhood abuse was, as the appeals court noted, to point out to the jury that, despite this

---

[196] ECF # 43 at 406.

[197] *State v. Hoffner*, 102 Ohio St. 3d 358, 811 N.E.2d 48 (2004).

[198] ECF # 43 at 406.

[199] *Darden v. Wainwright*, 477 U.S. 168, 185-87 (1986).

[200] *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994), quoting *Strickland*, 466 U.S. at 690.

terrible trauma, she still had conflicting or contradictory feelings toward Russell. As such, I recommend finding that this does fall within the range of acceptable trial strategy.

(b)     *Failure to object at trial to preserve issues for appeal*

Russell here argues that his trial counsel was constitutionally ineffective because he did not object to various rulings at trial, thereby preserving those issues for appeal. Specifically, Russell asserts that it was ineffective assistance not to raise the issues of: (1) the purported violation of speedy trial rights; (2) the alleged violation of his double jeopardy rights by subjecting him to a sentence upon conviction for both kidnapping and rape, which Russell contends are allied offenses of similar import; (3) the admission of the testimony of a "surprise" witness; and (4) the admission of "other acts" testimony.[201]

I also note that Russell appears to allege, without specifying, that if counsel had investigated other civil litigation in other courts prior to this trial, counsel would not have pursued various, unspecified lines of questioning.[202] As previously stated, because this was never presented to Ohio courts as a stand-alone ineffective assistance claim, it cannot be considered exhausted.[203] However, the federal habeas court may address a non-exhausted claim if it is clear that the claim is without merit.[204] Since Russell has provided no showing here as to exactly how a greater familiarity with certain unspecified other cases involving

---

[201] *See*, ECF # 21 at 59-61.

[202] ECF #1 at 6C.

[203] *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987). Same claim under the same theory needs to be presented to state court.

[204] *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987).

unspecified family members would have precisely effected any specific aspect of his attorney's performance, I recommend finding that, to the extent this is meant to be a separate claim of ineffective assistance, Russell has not shown either a specific act of ineffectiveness related to a failure to investigate these case nor any specific prejudice to him from that purported failure.  Thus, I recommend finding that any separate claim here be denied.

With respect to the stated claims that were adjudicated in the state court, the state appeals court denied these claims of ineffectiveness, concluding first that the record shows Russell's trial counsel to have been "a well-prepared and zealous advocate for his client in the face of overwhelming guilt."[205]  In addition, the Ohio appellate panel noted that counsel has no obligation to raise issues of "questionable merit" at trial and that Russell's counsel "could have decided as a matter of trial strategy to be considerate of both the jury's and the court's patience" by not pursuing non-meritorious arguments.[206]

It is well-recognized in federal law that proof of constitutional ineffectiveness requires showing both that counsel's performance was objectively unreasonable and that such deficient performance prejudiced the defense rendering the trial unfair.[207]  Both prongs of the

---

[205] ECF # 43 at 407.

[206] *Id.*, citing *State v. Mayes*, No. 82592, 2004 WL 858099 (Ohio App. 8th Dist. April 22, 2004).  Counsel's decision not to call witnesses whose allegedly favorable testimony was likely irrelevant or hearsay was sound trial strategy, not ineffective assistance, since counsel could conclude that attempting to present such evidence would either alienate or unnecessarily tax the patience of judge and jury.

[207] *Strickland,* 466 U.S. at 687.

test must be met; no analysis of performance is required if the challenged action produced no prejudice.[208]

Here, the various decisions Russell alleges should have been challenged at trial have all been shown to have been correctly decided in the direct appeal.[209]  Thus, there can be no prejudice from failing to either preserve a non-meritorious issue for appeal.  Accordingly, without a showing of prejudice, there can be no claim of ineffective assistance of counsel.  I, therefore, recommend that the decision of the state appeals court here in denying these elements of Russell's ineffective assistance of counsel claim be found to be a reasonable application of clearly established federal law and Russell's habeas claim here should be denied.

## Conclusion

I recommend that the petition of Robert W. Russell for a writ of habeas corpus be denied in part and dismissed in part as is more fully set forth above.

Dated:   April 4, 2008                                s/ William H. Baughman, Jr.
                                                      United States Magistrate Judge

---

[208] *Id.* at 697.

[209] Although the state court of appeals ruled that Russell's double jeopardy claim was barred by the failure to assert an objection at trial, it went on to observe that Ohio courts have recognized kidnapping and rape as separate offenses, making the claim non-meritorious. ECF # 43 at 407.

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[210]

---

[210] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).